## FIRST NAT. BANK OF CHICAGO v. FIRST NAT. BANK OF WHEATON et al.

### No. 5377.

Circuit Court of Appeals, Seventh Circuit.

June 14, 1935.

Rehearing Denied Aug. 7, 1935.

John G. Campbell, Delbert A. Clithero, Herman A. Fischer, Carlton L. Fischer, and George W. Pierce, all of Chicago, Ill., for appellant.

Charles W. Hadley, of Wheaton, Ill., Robert F. Carey, of Chicago, Ill., and H. S. Pettis, of Wheaton, Ill., for appellees.

Before EVANS, SPARKS, and AL-SCHULER, Circuit Judges.

EVANS, Circuit Judge.

Appellant, on March 1, 1928, made a written lease of banking quarters to the First National Bank of Wheaton, hereinafter called the closed bank, for a term of ten years at a graduated rental ranging from $175 to $250 a month. The closed bank entered into and remained in possession and paid the rent reserved until December 31, 1932, when by agreement the rental was reduced from $225 to $175 per month. The closed bank continued in possession until January 18, 1933, when it was closed by order of the Comptroller of Currency. Charles F. Knapp, hereinafter called the receiver, was appointed receiver of the closed bank and as such receiver took possession of the premises and has since continued to act as receiver.

On February 1, 1933, appellant charges, the receiver "repudiated and rejected" the lease and refused to be bound by its provisions. Thereafter, the receiver remained in possession of a portion of the demised premises and paid therefor a reasonable rental which was fixed at $100. This sum was the highest and best rental obtainable for the portion of the premises thus occupied and was accepted by appellant who made every effort to rent the remainder of the premises, but was unable to do so until May, 1933, when a month to month tenant was secured at a rental of $30 per month. The difference between the rental reserved in the lease as modified for the entire term thereof and the highest and best rental obtainable was set at $6,045, which is the amount for which judgment is sought.

The liability of the receiver appointed in an equity suit, or of a trustee in bankruptcy, who has repudiated a lease, has been the subject of much litigation. The non-liability of a trustee of a bankrupt estate for rental of property which was terminated by the trustee repudiating the lease, no specific independent obligation in the lease appearing, was so definitely decided in the recent case of Manhattan Properties, Inc., v. Irving Trust Co., 291 U. S. 320, 54 S. Ct. 385, 78 L. Ed. 824, that further discussion of that question would be inexcusable. Exceptions or instances where the liability is traceable to an act or independent agreement—not the obligation to pay rent—appear in Irving Trust Co. v. Perry, Inc., 293 U. S. 307, 55 S. Ct. 150, 79 L. Ed. 379; In re National Credit Clothing Co. (C. C. A.) 66 F.(2d) 371.

The same question of liability was settled in the same way, but much earlier so far as receivers of property appointed

in equity suits are concerned. Where the lease does not provide specifically for the payment of a certain sum in case of its termination before the period fixed therein, the courts do not recognize a receiver's liability for damages for a breach of a covenant to pay future rent. This is upon the theory that a different rule applies to anticipatory breach of lease contracts than other contracts. Gardiner v. William S. Butler & Co., 245 U. S. 603, 38 S. Ct. 214, 62 L. Ed. 505; Central Trust Co. v. Chicago Auditorium Association, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811; In re McAllister-Mohler Co. (D. C.) 46 F.(2d) 91; In re National Credit Clothing Co. (C. C. A.) 66 F.(2d) 371; People ex rel. Nelson v. Equitable Trust Co., 277 Ill. App. 570.

The decree is affirmed.