## DINAN et al. v. FIRST NAT. BANK OF DETROIT.

### No. 8472.

Circuit Court of Appeals, Sixth Circuit.

Feb. 10, 1941.

J. Owen Guiney, of Detroit, Mich. (Guiney & Guiney, Neill E. Graham, and John D. Sullivan, all of Detroit Mich., on the brief), for appellants.

Robert S. Marx and William C. Kelly, both of Cincinnati, Ohio, and Lawrence I. Levi and Frank M. Wiseman, both of Detroit, Mich., and Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, for appellee.

Before SIMONS, HAMILTON and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

The appeal is from a judgment dismissing the suit of the appellants for damages on account of the breach of an executory contract, and is against an insolvent national bank. It has so often been said that the National Banking Act 12 U.S.C.A. § 1 et seq., constitutes "by itself a complete system for the establishment and government of national banks," Cook County Nat'l Bank v. United States, 107 U.S. 445, 448, 2 S.Ct. 561, 564, 27 L.Ed. 537; Davis v. Elmira Savings Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700; Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694; Grindley v. First National Bank-Detroit, 6 Cir., 87 F.2d 110, and the Congress having conferred upon the District Courts of the United States original jurisdiction of suits for winding up the affairs of such banks, T. 28 U.S.C.A. § 41, Subd. (16), the question usually arises, in a suit against an insolvent bank, whether it is of that character. This becomes of

importance, not only in determining the jurisdiction of the District Court, but also in determining the law to be applied.

In July, 1923, the appellants made a written lease with the predecessor of the appellee for the rental of a branch bank building, for a twenty-five year term at a monthly rental of $800, payable in advance. Up to and including the installment due February 1, 1933, the rent was paid as agreed. On February 11, 1933, the bank was closed and its affairs placed in the hands of a conservator, later succeeded by a receiver. On April 26, the conservator disavowed all obligations under the terms, conditions, and covenants of the lease. The sole provision therein governing the rights of the lessors in the event of default gave them or their representatives the right to re-enter into and to repossess the premises, and to remove therefrom the tenants and other occupants. There was no stipulation in the lease for acceleration of rentals, indemnity or liquidated damages in the case of default by the lessee.

Though denying the right of the conservator to repudiate the lease, the appellants re-entered the premises and re-let them at a reduced rental with the asserted purpose of mitigating damages. Following the appointment of the receiver, proof of claim was filed with him in the sum of $148,000 for alleged anticipatory breach of the lease, the asserted damages being based upon the then present value of the difference between the total agreed rent for the unexpired term, and the fair rental value of the premises at the time of the breach. Upon rejection of the claim the present action was begun in the state court. The receiver, though not a party thereto, instituted removal proceedings and subsequently obtained a certified copy of the transcript of the record which he filed with the clerk of the District Court in Detroit. Later, being apprehensive that the appellants would proceed with their action, regardless of the steps taken to remove it, the receiver filed an ancillary equitable proceeding in the Federal Court for an injunction restraining them from proceeding with their state court suit. A permanent injunction followed. While some preliminary steps were taken to appeal from the decree, the appeal was abandoned. A motion to remand having been denied, the law case proceeded to hearing in the District Court with the result that a judgment of no cause of action was entered in favor of the defendant bank, and a motion for new trial was denied.

■ The error assigned to the denial by the court of the motion to remand is before us for consideration, notwithstanding the finality of the injunction decree resulting from the abandonment of the appeal. While the decree might have been urged by the defendant as a bar to the consideration of the issue in the present case, even though it involved a jurisdictional question, Ostrander-Seymour Co. v. G. R. Trust Co., 6 Cir., 50 F.2d 567; Baldwin v. Traveling Men's Ass'n, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244, res judicata was not pleaded as an affirmative defense, and such definitive pleading is required by Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. We hold, nevertheless, that there was no error in denying the motion to remand. As hereinbefore indicated, the District Courts have jurisdiction of cases for winding up the affairs of any national bank. This is such a case. International Trust Co. v. Weeks, 203 U.S. 364, 367, 27 S.Ct. 69, 51 L.Ed. 224; In re Chetwood, 165 U.S. 443, 17 S.Ct. 385, 41 L.Ed. 782; Guarantee Co. of North Dakota v. Hanway, 8 Cir., 104 F. 369. Our decision in Connolly v. First Nat'l Bank-Detroit, 6 Cir., 86 F.2d 683, does not require a contrary result. It was based upon allegations of a declaration seeking but a money judgment against the defendant, which bore no analogy to a case for winding up the affairs of a bank. The action was against the bank and it was clear, from the averments of the declaration therein, that the transactions constituting the foundation for the suit occurred prior to its insolvency and the appointment of a receiver. While the present suit is likewise against the bank and the receiver is not joined, yet the declaration is replete with allegations that the default and repudiation, for which damages are claimed, were breaches of contract by the receiver and not by the bank. Notice of default was sent to the receiver, the claim for damages was filed with him, and was by him denied. While it is true that there is no express averment in the declaration that the default took place after insolvency, yet the dates so indicate, since the numerous adjudications, both in the court below and here, involving the affairs of the bank, leave nothing to implication in that respect.

■ We come, then, to the important question in the case, which is whether damages for breach of an executory contract may be recovered against the receiver of an insolvent national bank when the contract sued upon contains no provision for acceleration, indemnity or liquidated damages, and there has been no breach prior to the declaration of insolvency. The answer depends upon whether local law or the terms and implications of a federal statute are to govern decision. The importance of the question is made apparent by the statement, though admittedly dehors the record, that at the time of the banking collapse in 1933 the defendant bank had acquired, through innumerable mergers and consolidations, over 200 branches, most of which it held under lease; that the gross stipulated rentals under such leases exceeded $90,-000,000, and that damage claims in excess of $16,000,000 had been filed against the receivership because of their disaffirmance. What were the total gross rentals, under leases disaffirmed by receivers for all closed banks, can only be guessed at.

The law of Michigan, as announced by its court of last resort in McGraw v. Union Trust Co., 135 Mich. 609, 98 N.W. 390, recognizes that a lessor has a right to recover his damages for loss of future rents in accordance with the terms of the lease where the premises are vacated because of the insolvency of the lessee and the appointment of a receiver, and this notwithstanding the absence of a provision in the lease for acceleration, indemnity or liquidated damages in case of default. That this is not true in states which follow the English tradition, and where in the absence of statute or express contract a lessor, who has terminated a lease and evicted a tenant, has no further claim against the lessee, is indicated by Stellwagen v. Clum, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507. Compare William Filene's Sons Co. v. Weed, 245 U.S. 597, 38 S.Ct. 211, 62 L.Ed. 497.

Under the bankruptcy law as it existed before the enactment of the Chandler Act, the claim of the landlord for future rents based upon a covenant, terminated, on the bankruptcy of the tenant by re-entry, was not recoverable against the trustee even though the lease contained an indemnity covenant. Manhattan Properties, Inc. v. Irving Trust Co., 291 U.S. 320, 54 S.Ct. 385, 78 L.Ed. 824. But this was based upon the provisions of the bankruptcy law which limited, § 63, 11 U.S.C.A. § 103, the provability of debts against the bankrupt's estate to those which constituted a fixed liability absolutely owing at the time of the filing of the petition, whether then payable or not. The Bankruptcy Act has no application here for we are concerned only with the provisions of the National Banking Act.

That Act constitutes, as we have indicated, a complete system for the establishment and government of national banks. So it has been held that cases involving alleged violations of its express terms are not to be governed in any respect by local law under the doctrine of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, nor may the consequences of such acts be so governed, Deitrick v. Greaney, supra; Yonkers v. Downey, 309 U.S. 509, 60 S.Ct. 796, 84 L.Ed. 964. These authorities are important to the solution of our problem because they indicate that in respect to matters unequivocally controlled by the Banking Act, the rules of decision in the state court cannot supplant the congressional declaration. But they do not, with finality, answer our question for they deal with the letter of the statute and, except as the Yonkers case rejects the argument that the consequences of a violation of the terms of the Act must be left to be determined by state law, they do not define the area in which judicial determination will seek the implications of the statute in effectuating the federal policy implicit therein.

Section 194 of the Banking Act, however, provides for the payment by the Comptroller of ratable dividends on all claims proved or adjudicated. A long line of decisions establishes the principle that such claims must have accrued on or before the declaration of insolvency. White v. Knox, 111 U.S. 784, 4 S.Ct. 686, 28 L.Ed. 603; Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059; Kennedy v. Boston-Continental Nat. Bank, 1 Cir., 84 F.2d 592; First Nat. Bank of Chicago v. First Nat. Bank of Wheaton, 7 Cir., 78 F.2d 502. It is urged by the appellee that their doctrine be applied because the distinction between claims that have accrued before insolvency, and those that later accrue, though by reason of the insolvency, is an equitable one and is consistent with the policy of the Act to provide

for ratable distribution of dividends. It urges that the status of the creditor fixed before insolvency is fundamentally different from that of a lessor with a claim for future rents. The creditor, whether depositor or otherwise, of an insolvent bank, has parted with his money or property and has obtained in lieu thereof a claim against the bank. The lessor, in a lease breached after insolvency, regains possession of his property and may relet it, his only loss being of future profits. But this is a suit at law on contract, and however strongly these considerations may appeal to a court of equity, and however persuasive they might be to justify a more explicit declaration by the Congress defining and limiting claims against an insolvent bank as they have been limited against other insolvents under the bankruptcy power, they likewise give no conclusive answer to our query.

We are dealing, however, with a federal statute which requires the Comptroller to provide for the ratable payment of dividends upon all claims proved or adjudicated. With notable exceptions, the federal courts have applied this mandate of the statute only to claims which have accrued prior to the declaration of insolvency. We are required to consider whether this is in consonance with the general policy of the statutes in circumstances which make decision of more importance than ever before. It is true that Congress has not specifically declared, as in the bankruptcy law, that the debts must be provable as a liability unconditionally fixed and owing as of the time of insolvency. Notwithstanding, it may have left such remedial details to judicial implication. In Board of Commissioners v. United States 308 U.S. 343, 60 S.Ct. 285, 78 L.Ed. 313, cited with approval in Deitrick v. Greaney, supra, it was disclosed that the origin of the right there sought to be enforced, the exemption of Indians from taxation, was a treaty of the United States, and it was concluded that whatever rule was fashioned for recovery of interest on taxes unlawfully exacted by the state, was ultimately attributable to the Constitution, treaties or statutes of the United States, and owed no authority to the law-making agency of the state. If that rationalization is here applied it points to decision. Of course, the concrete problem there considered was the determination of the materials out of which a judicial rule, regarding interest

as an incident to the main remedy, was to be formulated,—a rule which concerned itself with remedies and not with rights. But when we consider the deeper significance of the present suit, the problem, as we envision it, is the same.

It is true that the present declaration seeks but a money judgment against the bank. It does not invoke the aid of the court to collect the judgment, or to control the business of the bank, or to interfere with the custody of its records, or its assets. But except for the federal statute the judgment it seeks is a nullity. It is pursued only because the Banking Act provides, Title 12, § 194,. U.S.C.A., that the Comptroller shall make a ratable distribution of money paid to him by the receiver, not only upon all claims proved to his satisfaction, but also upon all claims adjudicated in a court of competent jurisdiction. So much the appellants, by the argument in their brief, in effect concede. Except for the federal statute and the obligation it imposes upon the Comptroller, the appellants, whatever their rights under state law against the bank, would be powerless to enforce them against the assets in possession of the receiver. Nothing that the state could do would be allowed to interfere with the obligation of the Comptroller to make a ratable distribution of dividends. So we must conclude, in the application of the doctrine asserted in Board of Commissioners v. United States, supra, that the rights of the lessors sought to be enforced in the present case, and the manner of their enforcement, are attributable to a statute of the United States, and though by the statute their extent and the circumstances of their enforcement are left to judicial determination, they are, nevertheless, to be derived from it and the federal policy which it implements. Deitrick v. Greaney, supra; Yonkers v. Downey, supra. See also Awotin v. Atlas Exchange Bank, 295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393.

We do not ignore the case of Chemical Nat. Bank v. Hartford Deposit Co., 161 U.S. 1, 16 S.Ct. 439, 40 L. Ed. 595, but that case involved rights that had accrued against the bank prior to the declaration of insolvency, nor International Trust Co. v. Weeks, supra, wherein rights were being pursued against the agent of the shareholders who is, in the statutory scheme of liquidation, charged with the distribution of its surplus assets after its deposits and

other debts have been paid by ratable distribution. The suit was not, as this, in essence a suit against the receiver nor for a judgment required by law to be satisfied out of assets coming into the hands of the Comptroller for distribution.

The judgment is affirmed.