**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of Franklin National Bank, Plaintiff-Appellee,**

v.

**Jean M. GRELLA et al., Defendants,**

**Jean M. Grella, Defendant-Appellant.**

No. 485, Docket 76–7438.

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1977.

Decided April 5, 1977.

Jerold Lupoff, Garden City, N. Y. (Wolff & Diamond, Garden City, N. Y.), for defendants Lawrence Lever and Lever Holding Corp.

Before GURFEIN and MESKILL, Circuit Judges, and BARTELS, District Judge.*

BARTELS, District Judge:

This is an appeal from a declaratory judgment of the United States District Court for the Eastern District of New York (Judd, *J.*) granting summary judgment for the Federal Deposit Insurance Corporation ("FDIC") as Receiver of the Franklin National Bank ("Franklin") permanently enjoining the appellant, Jean M. Grella ("Grella") from terminating a certain ground lease originally entered into between Grella as lessor and Franklin as lessee but assigned by Franklin to Lawrence Lever ("Lever"). We reverse and remand to the district court for further proceedings upon the jurisdictional issues of whether FDIC has standing to sue upon the facts of this case.

The facts are not in dispute. On April 4, 1961, Grella as fee owner of a plot of land in Mineola, New York, leased the premises ("ground lease") to Franklin for a term of twenty years with four, twenty-year options to renew, at an annual rental of $21,-000. The exercise of two of the renewal options has extended the present term to the year 2021. The ground lease granted Franklin the right to assign or sublet the premises without Grella's consent with Franklin remaining liable for the rent and all other obligations. Paragraph 10 of the ground lease provides:

> "If the Tenant * * * shall file or there shall be filed against the Tenant a petition in bankruptcy or arrangement, or Tenant be adjudicated a bankrupt or make an assignment for the benefit of creditors or take advantage of any insolvency act, the Landlord may, if the Landlord so elects, at any time thereafter terminate this lease and the term hereof, on giving to the Tenant five days notice in

James J. Milligan, Mineola, N. Y. (Sprague, Dwyer, Aspland & Tobin, P. C., Mineola, N. Y.), for defendant-appellant Jean M. Grella.

Amalya L. Kearse, New York City (Hughes, Hubbard & Reed, New York City, Susan L. Thorner, New York City, of counsel), for plaintiff-appellee Federal Deposit Insurance Corporation, as Receiver of Franklin National Bank.

* Of the Eastern District of New York, sitting by designation.

writing of the Landlord's intention so to do * * *."

In 1962 Franklin subleased the premises to Lever and as a result of several subsequent transactions Lever became the assignee of Franklin's interest in the ground lease. Thereafter, Lever constructed an office building on the site, with a present value in excess of $2 million, and Franklin leased space until 1981 in the building for use as a branch banking office ("branch lease"). Since 1965 Lever has paid the rent on the ground lease, and there is no claim by Grella of default for non-payment.

On October 8, 1974, the Comptroller of the Currency of the United States declared Franklin insolvent and as required by statute appointed FDIC as its receiver pursuant to 12 U.S.C. §§ 191 & 1821(c). On the same date European-American Bank & Trust Co. ("EAB") entered into a Purchase and Assumption Agreement with FDIC to purchase certain of Franklin's assets and assume certain of its liabilities, see *In Re Franklin Nat'l Bank*, 381 F.Supp. 1390 (E.D. N.Y.1974); and since then EAB has occupied the branch office covered by the branch lease. Accordingly, there was no interruption of banking services at Franklin's office following the declaration of insolvency by the Comptroller.

Asserting that the declaration of insolvency by the Comptroller constituted a default under paragraph 10 of the lease, Grella on February 3, 1975 notified Franklin as well as others that the ground lease would terminate on February 11, 1975. On February 21, 1975, FDIC as receiver of Franklin commenced this action against Grella seeking a declaratory judgment that the notice of termination was null and void and that the ground lease continued in full force and effect, and also an injunction preventing Grella from terminating said lease based upon the Comptroller's declaration of insolvency and the appointment of FDIC as receiver. Prior to the institution of this suit Lever brought a declaratory judgment action in New York State Supreme Court, Nassau County, against Grella to determine the validity of Grella's termination notice of the ground lease. Before the decision by the state court Judge Judd rendered his decision whereupon the state court granted judgment for Lever against Grella predicated upon the doctrine of collateral estoppel. Among other claims of error, Grella contends that FDIC lacks standing as receiver to bring this suit, and that there is no controversy between herself and FDIC, and that the case is moot.

While the matter was before the district court Grella offered to deliver to FDIC a non-disturbance agreement as regards the branch lease,[1] which FDIC promptly rejected. Although this fact is mentioned in the district court's opinion there was no discussion or ruling upon its effect or relevance to the issues involved. Grella maintains that this offer undercuts any interest FDIC has in bringing suit predicated upon its concern for the branch lease, and that since the ground lease is neither an asset nor a liability of FDIC, it lacks standing to sue. The district court disagreed and found that FDIC had sufficient standing or interest to bring the action, stating that:

"If the FDIC is still the Tenant under the ground lease, then it is liable, either as receiver or in its corporate capacity, as

---

1. In her February, 1976, affidavit in opposition to FDIC's motion for summary judgment Grella stated: "It has never been my intention to interfere with the branch bank operation. I have never attempted to terminate this lease, and as I have offered before, I would gladly enter into *any* formal arrangement necessary to assure the FDIC of that fact." Joint Appendix A58 (emphasis added). In her March, 1975, affidavit in support of her motion to dismiss, Grella had made a similar offer. Joint Appendix A40–9. At the hearing for a preliminary injunction on March 4, 1975, her counsel stated

to the court: "if we succeed in our fight with Mr. Lever . . . then we will not terminate your tenancy." Joint Appendix A69.

A non-disturbance agreement may be equated to a covenant of quiet enjoyment in a lease. 33 N.Y.Jur., Landlord and Tenant § 160 at 496–97 (1964). Grella could hardly have given more.

FDIC seeks no relief against Lever nor does it set forth any basis for any possible claim against Lever if he refuses to consent to the assignment of the branch lease to EAB.

successor to Franklin for future payments under Article 15[2] of the ground lease in spite of Grella's termination of the lease. That fact gives FDIC an interest in the question, even if Grella has not yet filed a claim with the receiver." Moreover, the district court also agreed with FDIC that FDIC had an interest in the ground lease in order to carry out its statutory responsibilities explaining that "FDIC has a legitimate public interest in establishing the efficacy of transactions which it affects pursuant to its statutory duty as receiver of a national bank" which duty includes the obligation of FDIC to insure continuation of bank facilities at specific locations to induce a healthy bank to buy the assets of an insolvent bank.

I

■ Essentially, this is a controversy between Grella and Lever involving the interpretation of a lease under the New York State real property law. Consequently, we must determine the threshold question whether the plaintiff has standing to sue. This is a concept which is "among the most amorphous in the entire domain of public law." [3] Standing depends upon whether the plaintiff has " 'alleged such a personal stake in the outcome of the controversy' to warrant [its] invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on [its] behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), *citing Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The Supreme Court in *Warth* further elaborated: "Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." 422 U.S. at 500, 95 S.Ct. at

2206. While standing does not depend on the merits of the party's contention that certain conduct is illegal, standing does require an injury to the party arising out of a violation of a constitutional or statutory provision or other legal right. *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 732 & n.3, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972); *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1969). The question is thus posed whether FDIC will sustain an injury sufficient to give it standing in the event Grella is successful in terminating the lease.

Under the relevant provisions of the National Bank Act (12 U.S.C. §§ 191–200) and the Federal Deposit Insurance Act (12 U.S.C. §§ 1811–32) Congress has established a complete system for the administration and liquidation of insolvent national banks for the benefit of creditors with the receiver acting as the administrative agent of the Comptroller of the Currency. *Cook Co. Nat'l Bank v. United States*, 107 U.S. 445, 448, 25 S.Ct. 561, 27 L.Ed. 537 (1883); *In Re Liquidation of American City Bank & Trust Co., N. A.*, 402 F.Supp. 1229, 1231 (E.D.Wis. 1975); *District of Columbia v. Wardell*, 32 F.Supp. 769, 771–72 (D.D.C.1940), *rev'd on other grounds*, 74 U.S.App.D.C. 184, 122 F.2d 202, *cert. denied*, 314 U.S. 673, 62 S.Ct. 137, 86 L.Ed. 539 (1941). The Acts constitute a complete plan for the establishment and government of national banks, *Texas & Pac. Ry. v. Pottorff*, 291 U.S. 245, 253, 54 S.Ct. 416, 78 L.Ed. 777 (1934); *Dinan v. First Nat'l Bank of Detroit*, 117 F.2d 459, 461 (6th Cir. 1941), *cert. dismissed*, 315 U.S. 824, 62 S.Ct. 622, 86 L.Ed. 1220 (1942), under which the receiver has no more powers than those provided by the statute. 12 U.S.C. §§ 1821(c) & (d); 12 C.F.R. §§ 4.10(a)(1) & 306.2 (1976).

2. This provision of the lease provides that the tenant in case of termination shall remain liable for the difference between the rent reserved thereunder and the rent subsequently collected by the landlord for the remainder of the unexpired term, payable monthly as "such differences shall from time to time be ascertained . . . ."

3. *Hearings on S. 2097 Before the Subcomm. on Constitutional Rights of the Senate Comm. on the Judiciary*, 89th Cong., 2d Sess., pt. 2, at 498 (1966) (statement of Professor Freund). *See* Scott, *Standing in the Supreme Court—A Functional Analysis*, 86 Harv.L.Rev. 645 (1973).

*FDIC's Interest in the Ground Lease*

Numerous authorities have held that the receiver of an insolvent national bank appointed by the Comptroller is not an officer of the court but is an administrative representative of the Comptroller, and that none of the bank's assets, while in the hands of the receiver, are in reality in *custodia legis* but are subject to its administration. *Auten v. United States Nat'l Bank*, 174 U.S. 125, 19 S.Ct. 628, 43 L.Ed. 920 (1899); *Hulse v. Argetsinger*, 18 F.2d 944 (2d Cir. 1927). *See Oosterhuis v. Palmer*, 137 F.2d 322, 325 (2d Cir. 1943); *Wittnebel v. Loughman*, 80 F.2d 222, 224 (2d Cir. 1935), *cert. denied*, 297 U.S. 716, 56 S.Ct. 590, 80 L.Ed. 1001 (1936). While it succeeds to the rights of the creditors of the bank as well as the rights of the corporation in connection with the liquidation of the bank assets and is charged with the payment of expenses of administration and enforcement of the obligations of the bank, the receiver is not subject to liability for the provisions of the unexpired term of a lease of the bank premises and it may take a reasonable time to adopt or reject the same. *First Nat'l Bank of Chicago v. First Nat'l Bank of Wheaton*, 78 F.2d 502 (7th Cir.), *cert. denied*, 296 U.S. 651, 56 S.Ct. 368, 80 L.Ed. 463 (1935). *See Buhl Land Co. v. Kavanagh*, 131 F.Supp. 136, 143 (E.D. Mich.1954), *aff'd*, 223 F.2d 265 (6th Cir. 1955). Further, the refusal of an insolvent national bank and its receiver to take possession under a long-term lease does not entitle the lessor to damages from the bank or its receiver as lessee. *Fidelity Safe Deposit & Trust Co. v. Armstrong*, 35 F. 567 (C.C.S.D.Ohio 1888). Nor does the appointment of a receiver dissolve the insolvent bank, and a suit may be instituted against the bank without joining the receiver for a simple money judgment based upon the bank's obligations. *Bailen v. Deitrick*, 84 F.2d 375 (1st Cir.), *cert. denied*, 299 U.S. 579, 57 S.Ct. 44, 81 L.Ed. 427 (1936); *Luella Hannan Memorial Home v. First Nat'l Bank of Detroit*, 31 F.Supp. 276, 280 (E.D. Mich.1940). *Cf. Mallis v. Federal Deposit Insurance Corp.*, No. 76–7166, slip op. at 1205 & n.2 (2d Cir. Jan. 3, 1977).

■ It is central to the plan that a claim against an insolvent national bank in receivership cannot be maintained unless the liability of the bank accrued and became unconditionally fixed on or before the declaration of insolvency. To state it another way, such a claim must be due and owing at the time of the insolvency, 12 U.S.C. §§ 194 & 1821(d), otherwise it does not constitute a claim against a receiver regardless of what other rights the obligee may have. This rule was reaffirmed in *Kennedy v. Boston-Continental Nat'l Bank*, 84 F.2d 592, 597 (1st Cir. 1936), *cert. dismissed*, 300 U.S. 684, 57 S.Ct. 667, 81 L.Ed. 887 (1937), where in referring to a lease claim against an insolvent national bank the court said:

"The amount of the claim may be later established, but, when established, it must be the amount *due* and *owing* at the time of the declaration of insolvency, as of which time it is entitled, with the claims of the other creditors, to a ratable distribution of the assets of the bank. If nothing is due at the time of insolvency, the claim should not be allowed, for that would be in violation of the National Bank Act (12 U.S.C.A. § 194) calling for a ratable distribution."

■ Thus the claim of a lessor of office space of an insolvent national bank for the excess of rents reserved over the rental value upon subsequent entry of the landlord is not a claim that arose or became fixed until after insolvency and is unallowable against the receiver. *Boston-Continental Nat'l Bank v. Wendell Phillips Co.*, 84 F.2d 599 (1st Cir. 1936), *cert. dismissed*, 300 U.S. 684, 57 S.Ct. 667, 81 L.Ed. 887 (1937); *Kennedy v. Boston-Continental Nat'l Bank, supra*. It is manifest from these authorities that the claim of FDIC that it has standing in this suit upon the ground that Grella as landlord might have a claim for damages against the FDIC as receiver of Franklin arising from the difference between the rental reserved under the lease and the reasonable rental value thereunder for the balance of the term, is completely without merit. *Argonaut Savings & Loan Ass'n v. Federal Deposit Insurance Corp.*, 392 F.2d

195 (9th Cir.), *cert. denied*, 393 U.S. 839, 89 S.Ct. 116, 21 L.Ed.2d 110 (1968), is the most recent case that has come to our attention dealing with similar claims against receivers of insolvent national banks. There the court relying upon the reasoning of *Kennedy* and the authorities therein cited, recognized the right of FDIC to disaffirm a lease and to deny any claim of the landlord for rent or damages not due at the time of FDIC's appointment or arising thereafter.[4]

### FDIC's Interest in Branch Lease

■ While the branch lease depends upon the validity of the ground lease and FDIC as receiver has an option to succeed to Franklin's interest in this lease (which, incidentally, it apparently has not exercised), it suggests that it would suffer injury if the branch lease were terminated as a result of the termination of the ground lease. In support of this claim FDIC maintains that it has a statutory obligation to consider the banking needs of the community. 12 U.S.C. §§ 1821(d), (f) & (h). We agree with FDIC's position concerning its obligation. *See* Bransilver, *Failing Banks: FDIC's Options and Constraints*, 27 Admin.L.Rev. 327, 333–34 (1975). We further agree with its assertion that the viability of purchase and assumption agreements with a succeeding bank, such as the one made by FDIC with EAB, as an alternative method of winding up the affairs of national banks will be threatened if the branch office lease can be terminated without affording FDIC the protection necessary to assure the continuation of banking services at a particular location. In this case, however, the immediate threat to FDIC's occupancy does not come from Lever who joins FDIC in maintaining that the ground lease is in full force and effect. The real threat to FDIC's occupancy under the branch lease is Grella's potential ability to eliminate the same by cancellation if she is successful under the ground

lease. To offset this possibility Grella has tendered to FDIC a non-disturbance agreement as to the branch lease which is the equivalent to a covenant of quiet enjoyment in the event Grella is successful in terminating the ground lease.

This offer was promptly rejected. The reason given for the rejection was that Grella alone could not guarantee FDIC's continued occupancy since paragraph 11 of the branch lease required approval by Lever of any assignment of the branch lease. This seems to us to be circular and self-defeating reasoning since the non-disturbance agreement is predicated upon Grella's success in terminating the ground lease, in which event Lever's interest in the branch lease would be completely eliminated.[5] Assuming that such a non-disturbance agreement is unconditional and in all respects protects the interest of FDIC and its potential assignee EAB from any disturbance in continuation of banking business at the premises covered by the branch lease, it would follow that the interest of FDIC in the continuation of such banking services at the locus is in no way threatened by Grella.

Finally, FDIC argues that it would have standing to sue even if the termination of the ground lease posed no threat to its pecuniary interest because of its responsibilities as a government agency to protect its interests, citing *Federal Deposit Insurance Corp. v. Sumner Financial Corp.*, 451 F.2d 898, 904 (5th Cir. 1971); *United States v. Arlington County*, 326 F.2d 929, 931 (4th Cir. 1964); *United States v. City of Glen Cove*, 322 F.Supp. 149, 152 (E.D.N.Y.), *aff'd*, 450 F.2d 884 (2d Cir. 1971). We nevertheless believe that the responsibilities of FDIC as set forth in the Act, including the protection and enforcement of its policies to which we have previously alluded, is amply taken care of by the non-disturbance agreement if delivered. We do not believe that these responsibilities and policies can be

---

4. Indeed, Grella has admitted that she has no claim against Franklin for future rent in the event of a rental deficiency. (Grella's Brief at 13).

5. As a matter of fact in other Franklin locations FDIC and EAB are apparently satisfied with a best efforts agreement by the landlord to obtain a non-disturbance agreement from the landlord's mortgagee in the event of foreclosure. *See* Joint Appendix A65–70.

elaborated or enhanced by vague and amorphous generalities. The above cited cases are simply not applicable to the factual framework of this case, particularly since there is no policy or program of FDIC which is threatened other than those previously enunciated.[6]

## II

 There remains Grella's charge of mootness which apparently is predicated upon the hypothesis that FDIC has standing. This concept arises from the Article III limitation on the federal judicial power to decide "cases" and "controversies." The focus is on the issues and subject matter of the controversy and not upon the parties. *Mootness on Appeal in the Supreme Court*, 83 Harv.L.Rev. 1672 (1970). While the protection offered by Grella to FDIC removes any collateral consequences harmful to FDIC if Grella is successful, it does not eliminate or moot the controversy between Grella and Lever. It simply deprives FDIC of standing.

As Chief Justice Warren said in *Flast v. Cohen, supra*, 392 U.S. at 99, 88 S.Ct. at 1952:

"The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated."

And again:

"In other words, when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." *Id.* at 99–100, 88 S.Ct. at 1952.

So the issue here is not one of mootness but is one of standing. The controversy was originally initiated in the state court and would have proceeded to adjudication had not FDIC brought suit in the federal court to prevent any disturbance of the continuation of banking services in the community. While FDIC's access to the federal courts under 12 U.S.C § 1819 should be liberally construed, *see Franklin Nat'l Bank Sec. Litigation v. Andersen*, 532 F.2d 842 (2d Cir. 1976), we question whether it was necessary for FDIC to persist in interrupting the progress of the state court in deciding a matter of state law by application to the federal court after one of the parties has offered to remove the only collateral consequences or harm to FDIC arising from the controversy.

We therefore reverse the district court and remand the case to determine if Grella will deliver a viable non-disturbance agreement, for further examination of the parameters, wording and enforceability of the same with instructions that if the district court finds that this agreement in all respects protects FDIC in its occupation of the branch premises, then upon delivery of the same to dismiss the complaint of FDIC for lack of standing and to permit Grella and Lever as the real parties in interest to thrash out this issue which is a matter of state law in the state court. Absent such a finding and dismissal, this court retains jurisdiction for the purpose of proceeding to consideration of the merits.

---

**6.** Though the parties have not so argued, an examination of the record reveals that one concern of FDIC and Lever is that in the event Grella is successful in terminating the ground lease, FDIC may lose the parking spaces owned and provided by Lever under the branch lease. This issue is independent of the alleged dispute here between Grella and FDIC as set forth in the pleadings which arises from the lease between Grella and Lever and it cannot provide FDIC with standing in this case. If FDIC or EAB needs additional protection from Lever, that would be an issue separate and apart from the present lease controversy between Lever and Grella.