**BAYSHORE EXECUTIVE PLAZA PARTNERSHIP, a Florida General Partnership, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, a United States Corporation, Defendant.**

No. 89–2865–CIV.

United States District Court, S.D. Florida.

Sept. 24, 1990.

**508**

## MEMORANDUM OPINION

SCOTT, District Judge.

This Cause is before the Court upon the defendant's motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. As a result of a lease dispute, Bayshore Executive Plaza ("EXECUTIVE PLAZA"), the lessor, instituted this action against the lessee's liquidator, the Federal Deposit Insurance Corporation ("FDIC"). In essence, Executive Plaza is claiming damages against the FDIC, as liquidator of Bayshore Bank, for disaffirming two lease agreements [1] after Bayshore Bank had been declared insolvent on August 7, 1987. Having carefully reviewed the record and applicable legal authority, the Court is now prepared to rule.

## I. LEGAL STANDARD

Summary judgement is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law. Fed.R. Civ.P. 56(c). The moving party has the burden of proving or demonstrating the absence of a genuine issue of material fact. *Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406 (5th Cir.1980). This burden may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving part to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *De Cuellar v. Brady,* 881 F.2d 1561 (11th Cir.1989), *United of Omaha Life Ins. v. Sun Life Co.,* 894 F.2d 1555 (11th Cir.1990).

Shalle Stephen Fine, Gerald J. Tobin, P.A., Miami, Fla., for plaintiff.

Juan A. Gonzalez, Haley, Sinagra, Perez, P.A., Miami, Fla., for defendant.

## II. FACTUAL BACKGROUND

The facts involved are relatively simple and are not in dispute. On or about Au-

---

**1.** These lease agreements were entered into by Executive Plaza, the lessor, and Bayshore Bank, the lessee. Both of these lease agreements included space located at the Bayshore Executive Plaza.

gust 31, 1986, Executive Plaza entered into two lease agreements with Bayshore Bank. These agreements were to run for a period of approximately seven years. The first lease included space located on the third floor of Executive Plaza.[2] The second lease included space on the first and second floors as well as the drive-in facilities of Executive Plaza. The rent was to be paid in equal monthly installments payable on the first of each month.[3]

On August 7, 1987, approximately eleven months after the lease agreements were entered into, Bayshore Bank was declared insolvent by the Comptroller of the State of Florida ("COMPTROLLER"). Pursuant to Florida Statute section 658.79 (1984),[4] the Comptroller named the FDIC as liquidator of Bayshore Bank. Shortly thereafter, the FDIC accepted this appointment. The appointment was subsequently confirmed on August 7, 1987 by Order of the Dade County Circuit Court (Case No. 87–34691).

As liquidator, the FDIC was charged with the duty of terminating the business affairs of Bayshore Bank as expeditiously as possible. As a result, the FDIC, acting within the scope of its authority, decided to disaffirm the executory undertakings to which Bayshore Bank had become a party. Thus, on August 31, 1987, the FDIC disaffirmed the first lease agreement pertaining to the space on the third floor of Bayshore Executive Plaza. This termination was to be effective immediately. In addition, on September 9, 1987, the FDIC informed Executive Plaza that it had elected to terminate the second lease agreement covering the remaining office space and the drive-in facilities. The termination of the second lease was to become effective as of October 6, 1987.

Subsequently, on October 14, 1987, the FDIC, with Executive Plaza's consent, arranged for Eagle National Bank ("EAGLE BANK") to sublease a portion of the premises in question. This arrangement was consummated by including an addendum to the previous lease agreements. Thereafter, Eagle Bank began operating a banking facility in Executive Plaza on the first floor and in the drive-in facilities. Executive Plaza now sues the FDIC for the value of one year's rent for the unoccupied space located on the second and third floors of this facility which Bayshore previously occupied.

## III. LEGAL ANALYSIS

Simply stated, this case revolves around the application of 12 U.S.C. § 1821(e), as amended in August 1989, as well as, the application federal and state common law. Accordingly, the Court will now proceed to address each of these principles.

### A. APPLICATION OF 12 U.S.C. § 1821(e)

As a threshold, the Court must first determine the applicability of 12 U.S.C. § 1821(e) as amended in 1989 to the pre–1989 circumstances described herein.[5]

---

**2.** Bayshore Executive Plaza is an office building located at 10800 Biscayne Boulevard, Miami, Florida. Bayshore Bank leased approximately 15,400 sq. ft. of office space and the drive-in facilities at this location.

**3.** The record indicates that the initial rent payment, on the first lease agreement, was made December 1, 1986 at the commencement of the lease term. Such payments continued for nine consecutive months. In addition, the record indicates that the initial rent payment, on the second lease agreement, was made May 1, 1987 at the commencement of the lease term. These payments continued for five consecutive months.

**4.** Florida Statute section 658.79 states in pertinent part as follows:

> (1) Whenever the department has reason to conclude, based upon the reports furnished to it by a state bank or trust company examiner or upon other satisfactory evidence, that any state bank or trust company:
> (b) Is transacting its business in an unsound, unsafe, or unauthorized manner such that it is threatened with imminent insolvency,

the department [Department of Banking and Finance of Florida] may, in its discretion, forthwith designate and appoint a liquidator or receiver to take charge of the assets and affairs. . . .

**5.** The newly amended version of 12 U.S.C. § 1821(e) is a codification of both federal and state common law.

Generally, a court should apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory directive or legislative history to the contrary. *Bradley v. School Board of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), *U.S. v. Kolter*, 849 F.2d 541 (11th Cir.1988). After an extensive review, the Court concludes that there is neither legislative history nor statutory directive which precludes the immediate application of the statute as amended in 1989.[6] In addition, it is disingenuous to maintain that Executive Plaza's private expectations would be upset by the retroactive application of this statute. This is particularly so, in as much as, Executive Plaza commenced this action several months after the amended statute went into effect. Accordingly, the Court will apply the 1989 amended version of 12 U.S.C. § 1821(e) to the facts as described herein. The Court will now proceed to consider the substantive merits of 12 U.S.C. § 1821(e).

This statute, 12 U.S.C. § 1821(e), authorizes the receiver of a banking institution to repudiate any contract or lease which it determines to interfere with the process of winding up the bank's affairs. Specifically, 12 U.S.C. § 1821(e)(1) provides in pertinent part as follows:

(1) In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—

(A) to which such institution is a party

(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

An appropriate interpretation of this statute requires the Court to define the individual terms and then construe it in its entirety.

Although this statute expressly refers to receivers and conservators, the term "receiver" includes among other things an agency, such as the FDIC, charged with the duty of winding up the affairs of a bank. 12 U.S.C. § 1813(j). The term "insured depository institution" refers to any bank ... the deposits of which are insured by the Corporation [FDIC] pursuant to this chapter. 12 U.S.C. § 1813(c)(2). The term "bank" includes any [n]ational bank [or] state bank. 12 U.S.C. § 1813(a)(1)(A). Hence, this statutory provision undoubtedly applies to the FDIC, as liquidator of a state chartered bank, such as Bayshore.

In addition, 12 U.S.C. § 1821(e)(4)(A) precludes both the recovery of that which has not accrued prior to the date of repudiation or the date the repudiation becomes effective and the recovery of damages under any acceleration clause or other penalty provision in the lease. The lease agreement executed between Executive Plaza and Bayshore Bank contained a provision which gave the lessor the right, in the event of insolvency, to either continue or terminate the lease agreement. In the event the lease agreement is terminated, the lessor has a claim for damages not to exceed the amount of rent reserved by the lease agreement for the next year succeeding the date of termination. Thus, 12 U.S.C. § 1821(e)(4)(A) grants a receiver, such as the FDIC, the authority to repudiate a lease at its discretion. Therefore, contrary to Executive Plaza's contentions, the FDIC acted properly and in compliance with federal statutory directive. Although the foregoing analysis resolves the instant

---

**6.** A recent case, *FDIC v. Dalba*, No. 89–C–712–S, 1990 WL 43750 (W.D.Wis. filed Feb. 27, 1990), involved the application of 12 U.S.C. § 1823(e) as amended in August 1989. In *Dalba*, the Court was posed with the problem of applying 12 U.S.C. § 1823(e) to an action instituted prior to the effective date of the newly amended statute. The Court concluded that retroactive application of the newly amended law would not result in manifest injustice because there was almost no legitimate private expectation outweighing the public interest in enforcing a new rule. *FDIC v. Dalba, quoting, Allied Corp. v. Acme Solvents Reclaiming, Inc.*, 691 F.Supp. 1100, 1112 (N.D.Ill.1988).

dispute, the Court, for the sake of thoroughness, will consider the application of both federal and state common law respectively.

## B. APPLICATION OF FEDERAL COMMON LAW

Under federal common law, the rights and liabilities of a bank and the bank's debtors and creditors are unconditionally fixed at the declaration of the bank's insolvency. *American National Bank v. FDIC*, 710 F.2d 1528 (11th Cir. 1983), *FDIC v. Grella*, 553 F.2d 258 (2nd Cir.1977). A lessor's claim to a stipulated amount of damages for breach of a lease against a receiver as provided in such lease is not provable, unless such claim has accrued and become unconditionally fixed on or before the date when the bank was declared insolvent. *Argonaut Savings & Loan Association v. FDIC*, 392 F.2d 195 (9th Cir.1968), *Unisys Corporation v. FDIC*, 724 F.Supp. 454 (W.D.Tex.1988). In the instant case, the Bank was declared insolvent, and the FDIC's appointment as liquidator was confirmed on August 7, 1987. FDIC elected to reject the two lease agreements by letters dated August 31 and September 9, 1987. The FDIC elected to make the termination effective as of October 6, 1987. Prior to the time of these terminations, there was no rent due or owing on either of the lease agreements. Furthermore, Executive Plaza is not seeking damages for rent owing prior to the declaration of the bank's insolvency, but rather, the rent that accrued one year after the bank's declaration of insolvency. The rights and liabilities of Bayshore Bank were frozen at insolvency. *American National Bank v. FDIC*, 710 F.2d at 1540; *FDIC v. Grella*, 553 F.2d at 262. Thus, Executive Plaza is not entitled to recover rent that had not accrued prior to this time.

In addition, in *FDIC v. Grella*, the court stated that "while a receiver succeeds to the rights of the bank and corporation in connection with the liquidation of the bank's assets ... and enforcement of the obligations of the bank, the receiver is not subject to liability for the provisions of the unexpired term of a lease of the bank premises and it may take a reasonable time to adopt or reject the same." *FDIC v. Grella*, 553 F.2d at 262. Hence, the FDIC specifically elected to reject the lease agreement by the letters it delivered to Executive Plaza. Since the FDIC rejected the lease agreements within a reasonable amount of time after the declaration of insolvency, we conclude that the FDIC is not liable for the rent that accrued after the termination of the lease agreements in question.

## C. APPLICATION OF FLORIDA COMMON LAW

In addition, under Florida law, a receiver has the option of either accepting or rejecting executory contracts, however, once a receiver specifically elects to accept a contract, he is bound thereby. *D.R. Mertens, Inc. v. State*, 478 So.2d 1132 (Fla. 1st DCA 1985); *Real Estate Marketers v. Wheeler*, 298 So.2d 481 (Fla. 1st DCA 1974). In the instant case, FDIC specifically elected, through letters to Executive Plaza, to reject the lease agreements in question. Thus, under Florida law, FDIC, as a receiver, is not subject to liability for breach of a lease agreement once it has elected to reject it.

Furthermore, Florida Statute section 658.83 provides: (1) When the FDIC is appointed as liquidator or makes a decision to liquidate a bank of which it has been appointed receiver, it may proceed independently with liquidation pursuant to its rules and regulations. Hence, the FDIC correctly elected to repudiate the lease agreements by its letters to Executive Plaza.

## IV. CONCLUSION

Based upon the foregoing analysis and the authorities cited therein, it is hereby ORDERED and ADJUDGED as follows:

(1) The FDIC'S motion for summary judgement is hereby GRANTED.

(2) Counsel for FDIC shall submit a final judgment within five (5) days of the

512

date of this Order that is consistent with this Memorandum Opinion.

DONE and ORDERED.