**701 NPB ASSOCIATES, a New York General Partnership, Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, a United States Corporation, Defendant.**

**No. 91–8181–CIV.**

United States District Court, S.D. Florida.

Dec. 2, 1991.

J. Michael Burman, Slawson Burman & Critton, N. Palm Beach, Fla., for plaintiff.

William C. Crenshaw, Miami, Fla., for defendant.

## MEMORANDUM ORDER DENYING MOTION TO DISMISS

NESBITT, District Judge.

THIS CAUSE comes before the Court upon the defendant's motion to dismiss filed pursuant to Rules 12(b)(6) and 21 of the Federal Rules of Civil Procedure. As a result of a lease dispute, the lessor, 701 NPB Associates ("701 NPB"), filed this action against the lessee's liquidator, the Federal Deposit Insurance Corporation ("FDIC"). The suit concerns whether the FDIC repudiated the lease "within a reasonable period" pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (codified in scattered sections of 12 U.S.C. (1989). The Court must determine when the reasonable period limitation began to run and whether damages for accelerated rent are available. For the reasons set forth below, the defendant's motion to dismiss Counts I, II, III, and IV is DENIED.

## I. BACKGROUND

Plaintiff, 701 NPB, a general partnership organized under the laws of the State of New York, owned a leasehold estate in the first and second floors of The First American Building in North Palm Beach, Florida (the "Premises"). 701 NPB leased the Premises to First American Bank and Trust ("First American") pursuant to a lease agreement (the "Lease") dated September 28, 1983. The term of the Lease extended for twenty-five years. First American agreed to pay rent in the amount of $253,500 per year, with a four percent rate increase per year.

On December 15, 1989, the Comptroller of the State of Florida declared First American insolvent, and appointed the FDIC as Receiver for First American. The FDIC accepted pursuant to 12 U.S.C. § 1821(c)(3)(A). After the appointment, the FDIC entered into an agreement with Barnett Banks, Inc. ("Barnett"). Barnett agreed to an option to purchase certain assets of First American, including First American's rights and obligations under the Lease. From December 15, 1989 through June 1990, Barnett paid the monthly rental installments due under the Lease.

On April 23, 1990, Barnett contacted 701 NPB, offering to lease approximately one-fifth of the Premises for less than $70,000 per year. 701 NPB rejected Barnett's offer because the offer would substantially diminish its rental income and impair its ability to rent the property as a whole. 701 NPB instead offered to reduce the rent on the entire space by $100,000. Barnett, however, rejected this counteroffer. On May 1, 1990, Barnett advised the FDIC that it would not assume the Lease.

On May 9, 1990, the FDIC appointed itself receiver pursuant to sections 1821(c)(4) and (5)(A). On June 11, 1990, the FDIC informed 701 NPB of its decision to disaffirm and terminate the Lease immediately. Barnett immediately disclaimed responsibility for the payment of utilities in the premises, and the FDIC cancelled insurance policies previously maintained by First American in connection with its occupancy of the Premises. 701 NPB thereafter submitted a proof of claim dated September 7, 1990, claiming $4,085,000 in unpaid rent.

The FDIC rejected the claim on February 28, 1991, on the grounds that the Lease was repudiated pursuant to 12 U.S.C. § 1821(e)(1) on June 11, 1990.

701 NPB then filed its complaint on April 29, 1991, stating four counts: the first for a declaratory judgment that the FDIC failed to repudiate the Lease within a reasonable period of time within the meaning of 12 U.S.C. § 1821(e)(2); the second for a declaratory judgment that the repudiation of the Lease was arbitrary and capricious; the third for damages under the Lease; and the fourth for a taking without just compensation in violation of the Fifth Amendment.

## II. DISCUSSION

It is well established that a complaint cannot be dismissed under Fed.R.Civ.P. 12(b)(6) " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Bank v. Pitt,* 928 F.2d 1108, 1111–12 (11th Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The allegations in the complaint are construed in the light most favorable to the plaintiff and are taken as true.[1] *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Whether the plaintiff will ultimately prevail cannot be determined merely on the pleadings, but must await proof.

The FDIC seeks to dismiss Counts I and II of the complaint on the grounds that the disaffirmance by the FDIC was both reasonable and timely under 12 U.S.C. § 1821(e)(2). The FDIC seeks to dismiss Count III because it seeks damages not available under 12 U.S.C. § 1821(e)(4), and Count IV because § 1821(e) does not violate the Fifth Amendment. The Court briefly addresses each argument in turn.[2]

### A. *Count I*

 Count I seeks a declaratory judgment that the FDIC failed to repudiate the Lease within a reasonable time of its appointment as receiver. Title 12, U.S.C. § 1821(e)(1) gives the FDIC the authority to repudiate any contract or lease when it determines that performance would be burdensome and repudiation would promote the orderly administration of the institution's affairs. The discretion to repudiate such a lease is limited, however, by subsection, 12 U.S.C. § 1821(e)(2), which states:

> The conservator or receiver appointed for any insured depository institution in accordance with subsection (c) of this section shall determine whether or not to exercise the rights of repudiation under this subsection *within a reasonable period* following such appointment.

(emphasis added).

The complaint alleges that the Comptroller of the State of Florida appointed the FDIC receiver of First American on December 15, 1989, and that the FDIC accepted appointment pursuant to section 1821(c)(3)(A). However, the FDIC did not repudiate the Lease until June 11, 1990— six months after the appointment. In its motion to dismiss, the FDIC notes that it did not appoint itself receiver, pursuant to sections 1821(c)(4) and (5)(A), until May 9, 1990—just thirty-three days before the repudiation of the Lease. As noted, Count I seeks a declaratory judgment that the FDIC failed to repudiate the Lease "within a reasonable period following such appointment." The dispute as to Count I thus centers on whether the "reasonable time" limitation began to run from the date of the acceptance of the state appointment on December 15, 1989 or the date of the federal appointment on March 9, 1990.

---

1. In support of the motion to dismiss, FDIC has submitted the affidavit of Mr. Richard O'Brien, Assistant Managing Liquidator for FDIC. The Court will not consider this evidence in connection with Defendant's motion as the Court has determined that it is inappropriate at this stage of the proceedings to convert Defendant's motion to dismiss into a motion for summary judgment.

2. The parties have agreed that the complaint will be amended to name FDIC "as Receiver for First American Bank and Trust" as the Defendant in this action. The Court therefore declines to address Defendant's arguments concerning whether FDIC is the proper defendant in this action.

Pursuant to the plain language of section 1821(e)(2), the "reasonable time" limitation begins to run from the date the receiver is appointed in "accordance with subsection (c)" of the statute. Subsection (c) governs the FDIC's acceptance of state appointments and federal appointments as conservator or receiver. Section (c)(3)(A) states that whenever the appropriate state authority of any insured state depository institution tenders to the FDIC an appointment as conservator or receiver, the FDIC may accept the appointment. Section (c)(4) states that the FDIC may appoint itself as sole conservator or receiver if it determines that certain enumerated conditions have been met. See e.g., Bayshore Executive Plaza Partnership v. FDIC, 750 F.Supp. 507, 509 (S.D.Fla.1990) (FDIC became receiver for purposes of § 1821(e) when appointed by State Comptroller under § 1821(c)(3)(A)). Thus, the "reasonable period" limitation began to run in the instant case on or about December 15, 1989, when the FDIC accepted the Comptroller of the State of Florida's tender of appointment as receiver. See also RTC v. United Trust Fund, 775 F.Supp. 1465 (S.D.Fla.1991) (where RTC appointed multiple conservators and receivers, the time limitation for repudiation began when first conservatorship was created).

At this stage, the Court declines to review the merits as to what constitutes a "reasonable time," as such a review is "fact sensitive," The Rechler Partnership v. RTC, 1990 U.S.Dist. LEXIS 18714, at *25 (D.N.J. Sept. 4, 1990), and must occur on a case by case basis. See Union Bank v. FSLIC, 724 F.Supp. 468, 471 (E.D.Ky.1989) (whether the conservator repudiated within a reasonable time depends upon the circumstances of the case). Limiting its review to the sufficiency of the complaint, the Court finds that 701 NPB has plead sufficient allegations as to Count I to state a claim.

### B. Count II

Count II alleges that the FDIC's repudiation of the Lease was arbitrary, capricious, and an abuse of discretion because the FDIC improperly delegated its statutory responsibility to disaffirm the Lease to Barnett. Pursuant to Barnett's agreement with the FDIC regarding the acquisition and assumption of First American's assets, dated April 23, 1990, Barnett reviewed which of First American's office spaces should remain open, and entered into formal negotiations with 701 NPB regarding the Premises. On May 1, 1990, Barnett advised the FDIC that it did not want to maintain the Lease. The FDIC appointed itself receiver on May 9, 1990, and disaffirmed the Lease on June 11, 1990, presumably relying on Barnett's review of the Lease. Plaintiff contends that 12 U.S.C. § 1821(e) places an affirmative responsibility of whether or not to repudiate the Lease on the FDIC, and not on Barnett or any other entity. Accordingly, the FDIC "abdicated its statutory responsibilities under FIRREA and delegated those responsibilities to Barnett impermissibly." (Paragraph 19 of Complaint).

701 NPB relies on FIRREA's plain language to assert that the FDIC improperly delegated its decision-making discretion to Barnett. 12 U.S.C. § 1821(e)(1)(B) and (C) states that:

(1) In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—

(B) the performance of which the conservator or receiver, *in the conservator's or receiver's discretion*, determines to be burdensome; and

(C) the disaffirmance or repudiation of which the conservator or receiver determines, *in the conservator's or receiver's discretion*, will promote the orderly administration of the institution's affairs.

(emphasis added).

The FDIC contends that Count II should be dismissed because Barnett had the right under the Acquisition and Assumption Agreement of April 23, 1990, to determine which, if any, of First American's assets it desired to acquire, and that following unsuccessful negotiations with 701 NPB regarding the Lease, it properly notified the FDIC that it did not want to maintain the Lease. Further, after receipt of Barnett's

business decision, the FDIC fulfilled its statutory responsibility by independently assessing whether the Lease was burdensome, and directly notifying 701 NPB of the disaffirmance. The FDIC also contends, without citing any authority, that 701 NPB has no private right of action to look behind what prompted the FDIC's disaffirmance. Lastly, the FDIC asserts that the six-week period from Barnett's notice to the FDIC and the FDIC notice of disaffirmance on June 11, 1990, was not an unreasonable period of time.

At this stage in the proceedings, reviewing the pleadings in the light most favorable to the plaintiff, the Court declines to find that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Accepting the allegations as true, and based on the plain language of sections 1821(e)(1)(B) and (C), the complaint is sufficient as to Count II to overcome the motion to dismiss. Again, whether the plaintiff will prevail must await further discovery.

### C. *Count III*

■■■ Count III seeks damages for the full amount due under the twenty-five year lease, less any rental income received by plaintiff up to the date of trial. The total unpaid rent under the Lease amounts to well over four million dollars. The FDIC asserts that Count III should be dismissed because 701 NPB seeks damages not available under 12 U.S.C. § 1821(e)(4), which limits damages to unpaid rent that accrued prior to repudiation or receivership. 12 U.S.C. § 1821(e)(4) states:

**(4) Leases under which the institution is the lessee**

**(A) In General**

If the conservator or receiver disaffirms or repudiates a lease under which the insured depository institution was the lessee, the conservator or receiver shall not be liable for any damages (other than damages determined pursuant to subparagraph (B)) for the disaffirmance or repudiation of such lease.

**(B) Payments of rent**

Notwithstanding subparagraph (A), the lessor under a lease to which such subparagraph applies shall—

(i) be entitled to the contractual rent accruing before the later of the date—

(I) the notice of disaffirmance or repudiation is mailed; or

(II) the disaffirmance or repudiation becomes effective,

unless the lessor is in default or breach of the terms of the lease;

(ii) have no claim for damages under any acceleration clause or other penalty provision in the lease; and

(iii) have a claim for any unpaid rent, subject to all appropriate offsets and defenses, due as of the date of the appointment which shall be paid in accordance with this subsection and subsection (k) of this section.

The FDIC asserts that under the above regulations, 701 NPB is only entitled to unpaid rent up to the date of disaffirmance, and because there is no dispute that all rent due under the Lease was paid up to the date of disaffirmance, Count III is without basis.

The FDIC's position, however, assumes that the FDIC repudiated the Lease in accordance with section 1821(e)(2). The parties agree that if the FDIC complied with the requirements of section 1821(e)(2) in repudiating the Lease, then the FDIC would be able to limit the damages recoverable against it under section 1821(e)(4)(A). The gravamen of 701 NPB's complaint, however, is that the FDIC's repudiation is *invalid* and should be set aside as never having occurred. Thus, the FDIC maintains, the Lease remains in effect, and the absence of rental payments since June 1990 has triggered the acceleration clause of the Lease.

The Court finds that as the validity of the repudiation is an open question at this stage in the proceedings, so is whether the damage limitation in section 1821(e)(4) applies. *See e.g., Americare Medical Supply, Inc. v. RTC*, CIV.A. 90–2008–0, 1990 WL 58589, *2 (D.Kan. Apr. 26, 1990) (suggesting that where plaintiff asserts that repudiation is untimely, unjustified, and in-

valid, the statutory limitation on damages may not apply). Count III does not fail pursuant to Rule 12(b)(6).

### D. *Count IV*

■ Count IV alleges that the FDIC's repudiation of the Lease constituted an unlawful taking without just compensation in violation of the Fifth Amendment. 701 NPB asserts that the Lease was a binding contract vesting it with certain constitutionally-protected property rights, among which was the "distinct expectation" that the Lease would remain in force and effect for its stated term. As in Count III, the plaintiff prays in Count IV for the full amount due under the Lease, less any rental income paid up to the date of trial.

The FDIC moves to dismiss Count IV on three grounds: (1) a receiver is empowered by the plain terms of FIRREA to repudiate such a lease if it finds the lease "burdensome"; (2) FIRREA is presumed constitutional and the plaintiff has made no assertion or showing that Congress acted in an arbitrary and irrational way; and (3) 701 NPB's claim for damages for breach of the Lease is not provable because its "expectation" that the Lease would remain in force is not a recognized property right. All three grounds, however, are misplaced.

701 NPB's complaint does not challenge the FDIC's general authority to repudiate contracts under FIRREA, nor does it assert that the disaffirmance or damages clauses under FIRREA are unconstitutional. Rather, the complaint challenges the FDIC's repudiation of the Lease *in this case* because the FDIC allegedly did not act "within a reasonable period" as set forth in section 1821(e)(2). Thus, the plaintiff does not take issue with FIRREA; indeed, 701 NPB's complaint seeks to enforce the statute. 701 NPB contends that an unlawful taking occurred only because the FDIC did not abide by the limitations set forth in FIRREA.

The FDIC cites *Bayshore Executive Plaza Partnership v. FDIC*, 750 F.Supp. 507 (S.D.Fla.1991), for its final proposition that 701 NPB does not have a recognized property right in the Lease for purposes of the Fifth Amendment. *Bayshore* likewise concerned a lessor's action against the FDIC over the repudiation of lease agreements after a bank had been declared insolvent. Following the FDIC's termination of the bank's lease, the lessor sued the FDIC to collect one-year's rent pursuant to a damage clause in the lease. *Id.* at 509–10. The FDIC moved for summary judgment. *Id.* at 508. The district court granted the motion, stating that "12 U.S.C. § 1821(e)(4)(A) precludes both the recovery of that which has not accrued prior to the date of repudiation or the date the repudiation becomes effective and the recovery of damages under any acceleration clause or other penalty provision in the lease." *Id.* at 510.

In addition to the plain language of section 1821(e), the district court noted that under federal common law, "[a] lessor's claim to a stipulated amount of damages for breach of a lease against a receiver as provided in such lease is not provable, unless such claim has accrued and become unconditionally fixed *on or before* the date when the bank was declared insolvent." *Id.* at 511 (citing *Argonaught Savings & Loan Assoc. v. FDIC*, 392 F.2d 195 (9th Cir.1968); *Unisys Corp. v. FDIC*, 724 F.Supp. 454 (W.D.Tex.1988). According to the FDIC, as 701 NPB's claim is based on a disaffirmance (or breach) that allegedly occurred six months *after* the date the bank became insolvent, 701 NPB's complaint fails to state a claim upon which relief can be granted.

The FDIC urges that Count IV must be dismissed because 701 NPB would not be entitled to damages whether or not the repudiation was timely. The argument develops as follows: If the FDIC's disaffirmance of the Lease is valid because it occurred within a reasonable time, then pursuant to section 1821(e)(4)(A), 701 NPB would not have a damage claim against the FDIC as receiver for First American. However, if the disaffirmance is invalid, then in effect it never occurred, but 701 NPB's claim would still not have accrued *prior to* the date First American was declared insolvent. *Bayshore*, 750 F.Supp. at 510–11. As a consequence, according to the FDIC, 701 NPB does not have a recognized property interest that implicates the

1342

Due Process Clause. *See Craig v. Carson,* 449 F.Supp. 385, 390–91 (M.D.Fla.1978) (a recognized liberty or property right is the first of four elements that must be met before the Due Process Clause applies).

The Court finds that the FDIC's argument fails for two reasons. First, *Bayshore* does not control. The issue in *Bayshore* was whether the FDIC acted properly by invoking section 1821(e)(4)(A) to preclude a penalty provision in a repudiated lease. There was no question that the repudiation *itself* was valid. The parties in that case never contested whether the receiver terminated the lease within a reasonable time; the question concerned what damages, if any, were available given that the repudiation *did* occur in accord with section 1821(e). Both the receiver and the lessor were fairly bound by the statute. Here, the *validity* of the repudiation is the essential issue. As the Court has noted, it is an open question whether the FDIC acted within a reasonable period. The Court must await further discovery before finding whether the FDIC repudiated the Lease in violation of FIRREA's procedural proscriptions, and if so, whether the takings clause was implicated.

Second, as the FDIC presents the issue, a receiver would be immune from liability whether or not it abided by the proscribed limitations set forth in FIRREA. Conceivably, the FDIC could delay disaffirming a lease or contract for months on end as long as rental payments were made or the contract remain fulfilled. The receiver's affirmative obligation under FIRREA to act within a reasonable period would be meaningless. *See The Rechler Partnership v. RTC,* 1990 U.S.Dist. LEXIS 18714, at \*22 (D.N.J. Sept. 4, 1990) (a receiver's policy of avoidance directly contradicts the express statutory responsibility to act within a reasonable period).

Accordingly, the Court finds that Count IV states a claim upon which relief can be granted.

DONE AND ORDERED.