PIONEER BANK AND TRUST COMPA-NY, formerly known as Pioneer Trust & Savings Bank, not personally but solely as Trustee under Trust Agreement dated December 8, 1956 and as Trust No. 10940, Phyllis Panijel and Muriel Velen, Plaintiffs,

v.

RESOLUTION TRUST CORPORATION, as Receiver of Great American Savings & Loan Association, formerly known as Oak Park Federal Savings & Loan Association, Defendant.

No. 91 C 6292.

United States District Court,
N.D. Illinois, E.D.

July 1, 1992.

Michael J. Torchalski, Supena & Nyman, Oak Brook, Ill., Scott M. Levin, Hinshaw & Culbertson, Chicago, Ill., for plaintiffs.

David L. Hazan, Joseph John Walczak, DeHaan & Richter, P.C., Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiffs brought an action for breach of contract under the Federal Deposit Insurance Act, 12 U.S.C. § 1811 *et seq.*, as amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), against the defendant Resolution Trust Corporation, as receiver of Great American Savings & Loan Association (RTC). The RTC now moves to dismiss plaintiffs' claim, pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. For the reasons below, we deny defendant's motion.

## BACKGROUND [1]

Plaintiffs are the trustee and the two beneficiaries of an Illinois land trust. In 1963, the trust leased property to Oak Park Savings & Loan Association, later known as Great American Savings & Loan Association (Great American). The lease provided that the tenant was obligated, among other things, to pay a monthly rent and to make all "necessary repairs, renewals, and replacements, interior and exterior, structural and nonstructural" (cplt. at 3) during the 99–year term of the lease.

---

1. Though the facts of this case are substantially undisputed, we keep in mind the appropriate standard for this motion. When considering a motion to dismiss, we must accept the plaintiff's allegations as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984), and view them, along with any reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Mosley v. Klincar,* 947 F.2d 1338, 1339 (7th Cir.1991).

Great American was declared insolvent and the RTC was appointed receiver.[2] On April 5, 1991, the RTC repudiated the lease, pursuant to 12 U.S.C. § 1821(e)(1).[3] There is no dispute as to the validity of the RTC's repudiation.

Plaintiffs claim that prior to being placed in receivership, Great American defaulted on its lease obligations to keep the property in good repair and to prevent waste and deterioration. The costs of making the necessary repairs are, according to plaintiffs, $226,215.00 (rehabilitation costs). These costs are alleged to have accrued prior to RTC's appointment as receiver. After the repudiation, plaintiffs submitted a claim to the RTC for recovery of, among other things, unpaid rent and the rehabilitation costs. The RTC paid plaintiffs' claim for unpaid rent, but on August 9, 1991, disallowed the claim for the rehabilitation costs. Unresolved is whether the applicable sections of the FIRREA justify the RTC's denial of payment for the rehabilitation costs.

## DISCUSSION

The parties agree that this action is governed by the FIRREA. However, they disagree on the applicable section. Plaintiffs claim that section 1821(e)(3) (section 3) permits recovery for rehabilitation costs because they are direct compensatory damages which accrued prior to the RTC's repudiation.[4] Defendant argues that section 1821(e)(4) (section 4), governing leases, precludes recovery of damages other than unpaid rent.[5]

Plaintiffs maintain that section 3 controls general contract repudiation damages un-

2. An April 5, 1991 letter from the RTC to defendant Panijel indicates that the RTC was appointed receiver of Great American on September 21, 1991. Though this date is not necessary for our disposition, we presume that the correct date is actually September 21, 1990.

3. 12 U.S.C. § 1821(e)(1) states:
In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—
(A) to which such institution is a party;
(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, *will promote the orderly administration of the institution's affairs.*

4. 12 U.S.C. § 1821(e)(3) reads as follows:
Claims for damages for repudiation
(A) In general
Except as otherwise provided in subparagraph (C) and paragraphs (4), (5), and (6), the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be—
(i) limited to actual direct compensatory damages; and
(ii) determined as of—
(I) the date of the appointment of the conservator or receiver; or
(II) in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.

(B) No liability for other damages
For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include—
(i) punitive or exemplary damages;
(ii) damages for lost profits or opportunity; or
(iii) damages for pain and suffering.

5. 12 U.S.C. § 1821(e)(4) reads as follows:
Leases under which the institution is the lessee
(A) In general
If the conservator or receiver disaffirms or repudiates a lease under which the insured depository institution was the lessee, the conservator or receiver shall not be liable for any damages (other than damages determined pursuant to subparagraph (B)) for the disaffirmance or repudiation of such lease.
(B) Payments of rent
Notwithstanding subparagraph (A), the lessor under a lease to which such subparagraph applies shall—
(i) be entitled to the contractual rent accruing before the later of the date—
(I) the notice of disaffirmance or repudiation is mailed; or
(II) the disaffirmance or repudiation becomes effective,
unless the lessor is in default or breach of the terms of the lease;
(ii) have no claim for damages under any acceleration clause or other penalty provision in the lease; and
(iii) have a claim for any unpaid rent, subject to all appropriate offsets and defenses, due as of the date of the appointment which shall be paid in accordance with this subsection and subsection (i) of this section.

less section 4 applies. They note that section 4 excludes only damages for the "disaffirmance or repudiation" of a lease. Thus, according to plaintiffs, because the rehabilitation costs are not damages that arose as a result of the repudiation of the lease, section 3 controls.[6] Plaintiffs' reasoning, while compelling to this point, ignores the fact that section 3 (just like section 4) is limited to damages "for the disaffirmance or repudiation of any contract." Thus, applying plaintiffs' reasoning to its logical end, neither section 3 nor section 4 has much to say about the controversy.[7]

Defendant claims that section 4 "specifically and unambiguously limits the type of damages which may be recovered by the lessor" from a receiver (dfts. motion at 2). As discussed above, this characterization does not recognize that section 4 addresses only damages resulting from the repudiation itself. Section 4 must be read consistently with section 3. Section 3 allows for *direct* compensatory damages fixed as of a certain date, while making it clear that other (arguably indirect) damages will not be permitted. Thus, section 3 limits the liability of a receiver who repudiates a contract by preventing recovery of future, accelerated or punitive damages. Section 4 evinces the same concerns in the special context of leases.[8]

The cases that address section 1821(e) bear out this interpretation. *See First Nat'l Bank v. Unisys Finance Corp.*, 779 F.Supp. 85, 87 (N.D.Ill.1991) (*future* rent recovery is not allowed. "When RTC repudiated the lease on August 23, 1990, it had performed all of its lease obligations up to that point. Had RTC been in default at the time it exercised its power to disaffirm the lease, the security agreement would have provided for payment of any arrearage"); *Bayshore Executive Plaza Partnership v. Federal Deposit Ins. Corp.*, 750 F.Supp. 507, 510 (S.D.Fla.1990), *aff'd* 943 F.2d 1290 (11th Cir.1991) ("12 U.S.C. § 1821(e)(4)(A) precludes both the recovery of that *which has not accrued* prior to the date of repudiation or the date the repudiation becomes effective and the recovery of any damages under any acceleration clause or other penalty provision in the lease") (emphasis added).

"In determining a statute's meaning, the court must not emphasize a single provision but should 'look to the provisions of the whole law, and to its object and policy.'" *First Nat'l Bank*, 779 F.Supp. at 87, *quoting Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 221, 106 S.Ct. 2485, 2493, 91 L.Ed.2d 174 (1986). Also, both parties agree that we should interpret the provisions at issue consistently with other provisions in the statute. Section 1821(d)(2)(H) is a provision of the statute that should also be read consistently with sections 3 and 4. Section 1821(d)(2)(H) provides:

> The Corporation, as conservator or receiver, shall pay all valid obligations of the insured depository institution in accordance with the prescriptions and limitations of this chapter.

12 U.S.C. § 1821(d)(2)(H). This provision requires the RTC to pay valid obligations of Great American, unless those obligations are limited elsewhere in the chapter.

---

**6.** In other words, like unpaid rent, other accrued obligations under a lease will exist independent of insolvency or the appointment of a receiver.

**7.** Plaintiffs also claim that application of section 4 to prevent recovery of rehabilitation costs (when section 3 would under their theory allow such recovery) violates their right to equal protection and deprives them of substantive due process. Because we deny defendant's motion on other grounds, we do not address plaintiffs' equal protection or due process arguments.

**8.** The inclusion of an unpaid rent provision in section 4 does serve to confuse the issue, because unpaid rent does not constitute damages resulting from repudiation. Thus, there would seem to be no need to have included this provision in section 4. Section 4 makes clear that repudiation does not absolve the receiver of any and all liability. Section 4 guards against penalty and acceleration clauses in leases while still allowing recovery for accrued lease obligations, which most often come in the form of unpaid rent. Rehabilitation costs which accrued under the lease cannot be analogized to penalty or acceleration clauses triggered by a repudiation. We assume that the rent would have been higher if the lessor had the repair obligation. Keeping the property in good repair is but another form of payment for the lease of space.

The legislative history of the FIRREA suggests that Congress did not intend to limit the RTC's liability under section 4 for accrued lease obligations. Along with confirming the "historic right" of a receiver to repudiate a contract, the legislative history states that if the RTC repudiates a contract or a lease in a timely manner "there will be no *resulting* damages *for the repudiation*" against the receiver or the financial institution in default. H.R.Rep. No. 101–54(1), 101st Cong., 1st Sess. (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 127 (emphasis added). This legislative history reflects Congress' intent to shield a receiver from damages incurred *because* of a contract or lease repudiation, but not from damages for existing obligations.

Federal common law is also helpful in understanding the statute.

> Under federal common law, the rights and liabilities of a bank and the bank's debtors and creditors are unconditionally fixed at the declaration of the bank's insolvency. A lessor's claim to a stipulated amount of damages for breach of a lease against a receiver as provided in such lease is not provable, unless such claim has accrued and become unconditionally fixed on or before the date when the bank was declared insolvent.

*Bayshore*, 750 F.Supp. at 511 (citations omitted); *see also Executive Office Centers, Inc. v. Federal Deposit Ins. Corp.*, 439 F.Supp. 828, 829 (E.D.La.1977), *aff'd* 575 F.2d 879 (5th Cir.1978). Like federal common law, the FIRREA seeks to fix the liability of receivers who repudiate a lease.[9]

Other than arguing a plain-meaning reading of the statute, defendant has provided little support for its position. Defendant claims that repair costs are not recoverable under section 4, and cites *Bayshore* as support. As discussed above, *Bayshore*

prohibits recovery for costs accruing after repudiation, and thus actually supports our reading of the statute. Plaintiffs' claim for recovery of lease obligations in the form of accrued rehabilitation costs is not barred by section 4.[10]

CONCLUSION

12 U.S.C. § 1821(e)(4) does not prevent recovery of plaintiffs' rehabilitation costs. Therefore, we deny defendant's motion to dismiss plaintiffs' claim based on this section.

---

9. Defendant argues that plaintiffs' claim for rehabilitation costs is not "fixed," and thus not recoverable. Though it is perhaps true that plaintiffs' rehabilitation costs will only be "fixed" when the parties agree on them or when this court declares them to be, it is clear that plaintiffs are seeking only determinable damages that had accrued (and in that sense were indeed fixed) prior to repudiation. These damages are easily distinguished from punitive dam-

ages, accelerated lease payments or pain and suffering.

10. Because we find that the statute is not unclear on whether it prevents recovery of rehabilitation costs, we do not accede to the RTC's interpretation. *See Resolution Trust Corp. v. CedarMinn Bldg. Ltd. Partnership*, 956 F.2d 1446, 1451 (8th Cir.1992).