651 So.2d 134 (1995)
Paul W. LEVINE and Marcia L. Levine, Appellants,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for First American Bank and Trust, Appellee.
No. 93-2207.
District Court of Appeal of Florida, Fourth District.
February 15, 1995.
Rehearing Denied March 28, 1995.
*135 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellants.
Hywel Leonard and Kathleen S. McLeroy of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellee.
GUNTHER, Judge.
Appellants, Paul and Marcia Levine, plaintiffs below (the Levines), appeal a final judgment allowing the Federal Deposit Insurance Corporation (FDIC) to repudiate an agreement whereby the Levines deeded title to three properties in lieu of foreclosure. Because we find that the repudiation provision of the Financial Institutions Reform, Recovery and Enforcement Act, commonly known as FIRREA, cannot be applied retroactively in the instant case, we reverse.
The Levines owned three properties in Boca West; improved lot 35, unimproved lot 36, and their residence located at 19727 Oakbrook Circle. First American Bank & Trust (FABT) held a mortgage against the above properties secured by various promissory notes. The Levines had defaulted on the note payments as well as failing to pay the real estate taxes on the properties for 1986 and 1987.
In order to avoid foreclosure, the Levines entered into an agreement with FABT whereby the mortgage debt of $3,541,160.81 would be forgiven in exchange for the Levines deeding title to the above properties. This agreement, entered on December 2, 1987, contained some unusual terms for a deed in lieu of foreclosure agreement. FABT was to sell each of the three properties at the best price available but in no event were they to sell for less than 1.7 million dollars for improved lot 35; $400,000 for unimproved lot 36; and 2.4 million dollars for the Oakbrook Circle residence. Moreover, the Levines were to receive $200,000 for the sale of improved lot 35, $100,000 for the sale of unimproved lot 36 and $200,000 for the sale of the Oakbrook Circle residence. Finally, pursuant to the agreement, the Levines were allowed to reside in the Oakbrook Circle house rent free until that property was sold. Thereafter, by a special warranty deed dated December 22, 1987, the Levines transferred the three properties to FABT and FABT in turn satisfied the notes and mortgage.
In May of 1988, FABT sold both improved lot 35 and unimproved lot 36 for 1.25 million and $400,000, respectively. However, FABT refused to pay the Levines the $300,000 required by the deed in lieu of foreclosure agreement. As a result, the Levines filed suit against FABT in April of 1988 seeking $300,000 in damages for the alleged breach of contract, and by a later amendment, an equitable lien and constructive trust on the proceeds of the sale of the Oakbrook Circle residence.
During the pendency of the Levines' suit, FABT was declared insolvent on December 15, 1989. That same day, FDIC was appointed receiver for FABT and substituted as a party in the instant case. FDIC immediately filed its answers and affirmative defenses specifically denying the enforceability of the agreement between the Levines and FABT. Thereafter, on August 7, 1990, FDIC gave the Levines written notice that, as receiver for FABT, it was disaffirming the 1987 agreement pursuant to 12 U.S.C. section 1821(e) of FIRREA. Ultimately, the trial court determined that FDIC had the right to repudiate the agreement pursuant to 12 U.S.C. section 1821(e) and granted FDIC a final judgment as to the possession of the *136 Oakbrook Circle residence.[1]
FDIC's role in the banking world has been described as two fold:
FDIC facilitates its purpose by serving in two distinct capacities: as an insurer of deposits of member banks and as a receiver for insured banks that have failed ... [A]s receiver FDIC marshals the assets of the failed bank, sells acceptable assets to a financially sound and insured bank, and purchases and liquidates the assets that are unacceptable to the assuming bank. Because this "purchase and assumption" transaction facilitates a smooth transfer of assets with operations, it is generally regarded as the most desirable means of maintaining stability in the banking industry when a bank fails. [citations omitted].
FDIC v. Harrison, 735 F.2d 408, 412 (11th Cir.1984).[2] To aid FDIC in its role as receiver, Congress passed FIRREA, effective on August 9, 1989, nearly a year and a half after the agreement between the Levines and FABT. To facilitate the marshalling of assets, FIRREA provides the receiver the power to affirm or repudiate a contract entered into by the failed bank. Specifically, 12 U.S.C. section 1821(e)(1) (1989) provides:
In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease 
(A) to which such institution is a party;
(B) the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
(C) the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.
Relying on the above quoted statute, FDIC repudiated the 1987 agreement between the Levines and FABT contending that FIRREA can be applied retroactively. Thus, the issue in the instant case is whether the repudiation provision of FIRREA, effective August 9, 1989, can be applied retroactively to disaffirm the deed in lieu of foreclosure agreement which was in existence prior to the act's effective date.
At the root of this issue is the tension between two differing cannons of construction: the presumption against retroactivity versus the maxim that courts must apply the law in effect when it renders its decisions. In Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 206, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), the Supreme Court stated:
[R]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.
However, the Supreme Court has also promulgated a rule that tends to establish a presumption of retroactivity. In Bradley v. School Bd. of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Court determined that all courts should apply the law in effect at the time of rendering a decision unless doing so would result in manifest injustice.
The Supreme Court reconciled the apparent conflict between the Bowen and Bradley rules, in the recent case of Landgraf v. USI Film Products, ___ U.S. ___, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Before resolving the conflict between the two rules of construction, the Court noted that the presumption against retroactivity finds its roots in the U.S. Constitution and that this presumption is strongest when new provisions affect contractual or property rights. ___ U.S. at ___, 114 S.Ct. at 1500. To resolve this conflict, the Supreme Court stated:
Our holding in Bradley is similarly compatible with the line of decisions disfavoring "retroactive" application of statutes ... Although that language suggests a categorical *137 presumption in favor of application of all new rules of law, we now make it clear that Bradley did not alter the wellsettled presumption against application of the class of new statutes that would have genuinely "retroactive" effect. Like the new hearing requirement in Thorpe [v. Housing Authority of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969)], the attorney's fees provision at issue in Bradley did not invoke the presumption against retroactivity ...
Moreover, in none of our decisions that have relied upon Bradley or Thorpe have we cast doubt on the traditional presumption against truly "retrospective" application of a statute.
When a case implicates a federal statute enacted after the events in the suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.
Id. at ___-___, 114 S.Ct. at 1503-05 (emphasis added). In reconciling these two maxims of construction, it appears that the Supreme Court has provided the analytical framework for determining whether a federal statute can be applied retroactively. First it must be determined whether Congress has provided for the statute's scope in legislative history, and if so, abide by that directive. If there is no Congressional directive, it must then be determined whether the statute would have "truly retroactive effect", and if so, the presumption against retroactive application is the appropriate default rule.
In the FIRREA context, it is clear that Congress offered no legislative guidance on whether the repudiation provision of section 1821(e) should be given retroactive effect. Bayshore Exec. Plaza Partnership v. FDIC, 750 F. Supp. 507 (S.D.Fla. 1990), aff'd, 943 F.2d 1290 (11th Cir.1991). Moreover, courts have been unable to find legislative directive with regards to other provisions of FIRREA. See FDIC v. New Hampshire Ins. Co., 953 F.2d 478 (9th Cir.1991); FDIC v. 232, Inc., 920 F.2d 815 (11th Cir.1991); FDIC v. Haddad, 778 F. Supp. 1559 (S.D.Fla. 1991). Due to Congress' silence, therefore, it cannot be concluded that section 1821(e)(1) was directed to be applied retroactively.
The next step under Landgraf is to determine whether the application of section 1821(e)(1) would have "truly retroactive effect" in this case: whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. In the instant case, the Levines entered into a valid deed in lieu of foreclosure agreement in 1987. Pursuant to the agreement, the Levines deeded fee simple title to three properties, relinquished equity in the amount of $950,000 and surrendered their homestead. In return, the Levines were given the right to live rent free in the Oakbrook Circle residence and were entitled to a portion of the proceeds from the sale of the three properties. As such, the contract vested the Levines with mature and unconditional property rights. Repudiation of this contract would therefore infringe on the Levines contractual right to the $200,000 portion of the sale of the Oakbrook Circle residence as well as abolish their right to possession of the Oakbrook Circle residence until the sale of that lot. Accordingly, application of section 1821(e)(1) in the instant case would have "truly retroactive effect" as it would impair the contractual rights the Levines possessed when the contract was entered in 1987.
Pursuant to Landgraf then, section 1821(e)(1) should not be applied retroactively in the instant case. The legislative history behind the enactment of section 1821(e)(1) is silent on the issue of retroactivity. Moreover, retroactive application of the repudiation provision would infringe on the Levines' *138 vested contractual rights. As such, the presumption against retroactive application governs the instant case. Therefore, the trial court erred in determining that section 1821(e)(1) of FIRREA could be applied retroactively thereby allowing FDIC to repudiate a contract entered into in 1987. Accordingly, this case is reversed and remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PARIENTE and SHAHOOD, JJ., concur.
NOTES
[1] Relating to the previously sold properties, the trial court granted the Levines a $300,000 unsecured claim against FDIC. However, the propriety of this determination is not an issue in this appeal.
[2] Federal law governs cases involving the rights of the FDIC when that agency acts as the liquidator for a failed bank. See American Nat'l Bank v. FDIC, 710 F.2d 1528 (11th Cir.1983).